# 24-1099

## United States Court of Appeals
## for the Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

-v.-

AIMEE HARRIS,

*Defendant-Appellant.*

*On Appeal from the United States District Court
for the Southern District of New York*

---

## BRIEF OF APPELLANT

---

JANEANNE MURRAY
*Attorney for Aimee Harris*
Murray Law LLC
80 Broad Street, 19th Floor
New York, NY 10004
(646) 209-7553

# Table of Contents

Jurisdictional Statement Pursuant to Rule 28(a)(4) ..............................1

Statement of the Issues Presented for Review ...........................................2

Statement of Facts ...................................................................................3

    The Offense Conduct ........................................................................3

    The Plea Agreement .........................................................................4

    The Guilty Plea ...............................................................................6

    The Pre-Sentence Investigation Report ............................................7

    The Sentencing Submissions ............................................................9

    The Sentencing ...............................................................................12

    The Judgment .................................................................................17

    The Notice of Appeal ......................................................................18

Summary of Argument ...........................................................................19

ARGUMENT

The District Court Abused its Discretion when it Authorized
Probation to Disclose Protected Information to Appellant's
Healthcare and Substance Abuse Providers ............................................20

  A.  Applicable Standard of Review.........................................................20

B.   The Presentence Report Is a Highly Confidential Document
     Subject to Stringent Disclosure Requirements ................................23

C.   Appellant Has Constitutional, Statutory and Common Law
     Rights in the Confidentiality of her Healthcare Data and the
     Integrity of her Relationships with Healthcare Providers .............27

D.   The District Court Failed to Present a Compelling Reason for
     the Blanket Authorization to Probation to Release her
     Presentence Report and her Drug Treatment and Mental
     Health Evaluations .........................................................................30

E.   The District Court Improperly Delegated its Sentencing
     Authority to the Supervising Probation Officer ..............................32

Conclusion .........................................................................................34

Certificate of Compliance ....................................................................35

# Table of Authorities

<u>Cases</u>

*Hancock v. Cty. of Rensselaer*, 882 F.3d 58 (2d Cir. 2018))...............27, 29

*Igneri v. Moore,* 898 F.2d 870, 873 (2d Cir. 1990) ...................................29

*Nixon v. Administrator of General Services,* 433 U.S. 425 (1977) ....29, 30

*Prescott v. Cty. of Stanislaus*, 2011 WL 2119036, (E.D. Cal. May 23, 2011) ........................................................................................................28

*United States v. Amodeo*, 1995 WL 261517 (S.D.N.Y. May 3, 1995), *rev'd in non-relevant part*, 71 F.3d 1044 (2d Cir. 1995) ..........................26

*United States v. Charmer Indus., Inc.,* 711 F.2d 1164 (2d Cir. 1983) ...........................................................................................................25, 30

*United States v. Corbitt,* 879 F.2d 224 (7th Cir.1989)................23, 25, 26

*United States v. Dupes*, 513 F.3d 338 (2d Cir. 2008)...................20, 21, 22

*United States v. Jenkins,* 854 F.3d 181 (2d Cir. 2017),...........................20

*United States Dep't of Justice v. Julian*, 486 U.S. 1 (1988) ...................26

*United States v. Kunz*, 68 F.4th 748 (2d Cir. 2023).................................33

*United States v. MacMillen*, 544 F.3d 71 (2d Cir. 2008) .........................21

*United States v. Matta*, 777 F.3d 116 (2d Cir. 2015).............21, 32, 33, 34

*United States v. Madoff*, 2009 WL 3347945 (S.D.N.Y. Oct. 13, 2009) ...................................................................................27

*United States v. Myers*, 426 F.3d 117 (2d Cir. 2005)..............................20

*United States v. Olano*, 507 U.S. 725 (1993) ..........................................22

*United States v. Peterson*, 248 F.3d 79 (2d Cir. 2001).......................32, 33

*United States v. Reeves*, 591 F.3d 77 (2d Cir. 2010) ...............................21

*United States v. Reyes,* 283 F.3d 446 (2d Cir. 2002)...............................30

*United States v. Sofsky*, 287 F.3d 122 (2d Cir. 2002) ..............................22

*Whalen v. Roe,* 429 U.S. 589 (1977) .................................................29, 30

<u>Statutes</u>

18 U.S.C. § 371 ...........................................................................................1

18 U.S.C. § 3231 .........................................................................................1

18 U.S.C. § 3742 .........................................................................................1

28 U.S.C. § 1291 .........................................................................................1

<u>Rules of Criminal Procedure</u>

Fed. R. Crim. P. 32...................................................................................23

<u>Other</u>

Gregory W. Carman & Tamar Harutunian, *Fairness at the Time of Sentencing: The Accuracy of the Presentence Report*, 78 ST. JOHN's L. REV. 1, 5 (Winter 2004) ........................................................................................... 23

Michael R. Devitt, *Improper Deportation of Legal Permanent Residents: The U.S. Government's Mischaracterization of the Supreme Court's Decision in Nijhawan v. Holder*, 15 San Diego Int'l L.J. (2013) ......................................................................... 24

*A Proposal to Ensure Accuracy in Presentence Investigation Reports*, 91 Yale L.J. 1225 (May 1982) ...................................... 25

**Jurisdictional Statement Pursuant to Rule 28(a)(4)**

This appeal is from a judgment of the United States District Court, Southern District of New York, (Swain, C.J.) convicting Aimee Harris, the defendant, of Conspiracy to Commit Interstate Transportation of Stolen Property, in violation of 18 U.S.C. § 371. The district court imposed a sentence of one month in the custody of the Bureau of Prisons, followed by three years of supervised release.

Jurisdiction in this Court is pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. Jurisdiction in the district court was pursuant to 18 U.S.C. § 3231. A formal notice of appeal was timely filed by counsel on April 22, 2024.

## Statement of the Issues Presented for Review

Whether the district court abused its discretion when it imposed special conditions of supervision authorizing the U.S. Probation Office to provide Appellant's presentence report and medical and mental health data to her healthcare and substance abuse treatment providers without first obtaining her consent to such disclosures?

## Statement of Facts

<u>Offense Conduct</u>

In the summer of 2020, seeking a safe haven for herself and her children, Appellant moved into a spare bedroom at one of her friend's Florida homes. A22-23; A85. Coincidentally, Ashley Biden, the daughter of President Joe Biden, had previously occupied that bedroom. A22. Shortly into her stay, Appellant discovered property belonging to Biden, including a handwritten journal, with highly personal entries mentioning President Joe Biden, tax records, a camera, a cellphone and other private items. A22; A85. In late August 2020, Appellant reached out to co-defendant Robert Kurlander, who suggested selling the items. A22. In the following months, they engaged in efforts to sell Biden's journal, in part, because of the sensitive content it contained about a candidate for president of the United States. A22-24; A85. Appellant and Kurlander traveled to New York with the journal to meet with the media outlet Project Veritas. A24. After a couple meetings, Appellant and Kurlander released the property to Project Veritas, in exchange for

3

a payment of $40,000.  A28.  Appellant and Kurlander split the

proceeds, with Appellant planning to use her portion to pay legal

expenses related to her family court case.  A28-29; A63; A85.

The Plea Agreement

On August 16, 2022, Appellant executed a plea agreement with

the Government, whereby she agreed to plead guilty to count one of an

information charging her with conspiracy to commit interstate

transportation of stolen property, in violation of 18 U.S.C. §§ 371 and

2314.  A33.  As part of the agreement, appellant agreed to forfeit

$20,000 to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and

28 U.S.C. § 2461(c).  *Id.*  The parties stipulated to a Guidelines range of

8 to 14 months' imprisonment (the "Stipulated Guidelines Range").

A34.

The parties agreed that neither a downward nor an upward

departure from the Stipulated Guidelines Range was warranted, and

neither party would seek such a departure.  A35.  Nonetheless, "[t]he

parties agree[d] that either party may seek a sentence outside of the

4

Stipulated Guidelines Range based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a)." *Id*.

The plea agreement also contained a waiver of the defendant's right to appeal any sentence within or below the Stipulated Guidelines Range of 8 to 14 months. Specifically, it stated:

> It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 8 to 14 months' imprisonment and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation.

A36.

The Guilty Plea

On August 25, 2022, pursuant to the plea agreement, appellant pled guilty to Count One of the Information before Magistrate Sarah L. Cave. A44. Asked what she did to commit the crime, Appellant stated as follows:

> In September 2020, I found property, including a journal, belonging to another person in a place where I was living. Knowing that I did not have a right to take the property, I agreed with another person and did cause a journal to be transported from Florida to New York City. The value of the journal was more than $5,000. I know this because I did not directly receive the money for the journal; the organization that purchased it sent two payments of $10,000 each for my benefit to lawyers that were representing me in a child custody matter.
>
> I sincerely apologize for my actions and know that what I did was wrong illegal

A62-63. Appellant further admitted to taking additional property beyond the journal, and to traveling with the stolen property with another person across state lines. A64. Appellant's guilty plea was

6

accepted by the district court on August 29, 2022. District Court Docket #11.

<u>The Pre-Sentence Investigation Report</u>

The final presentence report ("PSR") was filed on November 18, 2022. *Id.* The probation officer found the applicable guideline range to be 8 to 14 months. PSR at 22. The probation officer nonetheless recommended a variance to a probationary sentence based on the following mitigating factors:

> [W]e factored the non-violent nature of the offense, the defendant's lack of criminal history, her mental health and substance use issues, her family ties and responsibilities, and her compliance with bail. Accordingly, in balancing the sentencing factors set forth in 18 USC 3553, most significantly, the history and characteristics of the defendant, and the objectives of punishment, deterrence, and promotion of respect for the law, we believe that a sentence of three years' probation with four months of home detention, a variance from the eight months called for in Zone B, is sufficient and is not greater than necessary.

*See* PSR at 25.

7

The probation officer added that "[g]iven Harris' mental health and substance use history, special conditions requiring her to comply with mental health and substance use treatment/testing as deemed appropriate by the U.S. Probation Office are warranted." *Id.* These proposed conditions were set forth as follows:

> You must participate in an outpatient mental health treatment program approved by the United States Probation Office. You must continue to take any prescribed medications unless otherwise instructed by the health care provider. You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments. The Court authorizes the release of available psychological and psychiatric evaluations and reports, including the presentence investigation report, to the health care provider.

> You will participate in an outpatient treatment program approved by the United States Probation Office, which program may include testing to determine whether you have reverted to using drugs or alcohol. You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments. The Court authorizes the release of available drug treatment evaluations and reports, including the presentence investigation report, to the substance use disorder treatment provider.

PSR at 27.

The Sentencing Submissions

On September 13, 2023, the defense submitted its first letter in connection with sentencing. Noting the seriousness of the criminal conduct and appellant's full acceptance of responsibility for it, the defense sought a probationary sentence, citing appellant's lack of criminal history, her compassion, her dedication as a mother, her childhood history of abuse, trauma and neglect, and the aberrational nature of the offense. A83-84. Counsel stated:

> Throughout Aimee's life, from the sexual abuse she endured as a child to the unending physical and psychological violence she endures at the hands of her ex-partner, she has suffered significant trauma. Despite the great deal of adversity, Aimee has a history of abiding by the law and contributing to our society. While on bail, Aimee has engaged in ongoing mental health treatment with her trusted counselor, gained and maintained employment and devoted herself to building a secure financial and domestic situation for her children.

A87. Counsel concluded:

> Aimee has been strained psychologically,
> physically and financially since 2014. In 2020,
> she made a serious mistake. Aimee knows her
> conduct was wrong. Her dire financial situation,
> due almost entirely to the costly and protracted
> litigation around the custody of her children,
> clouded her judgment. She is still learning to
> process her trauma and move forward with a
> healthy and happy life, and she understands that
> part of that journey is holding herself accountable
> for the actions that gave rise to this case. As such,
> we do not believe that a sentence that includes
> any period of incarceration is necessary or just.

A88. Annexed to this submission was a letter from appellant's

therapist of eight years, who recounted appellant's history of domestic

violence and recommended a sentence of probation to ensure the safety

of appellant's children. A90-91.

On September 20, 2023, the government submitted its first letter

in connection with sentencing. Noting that appellant "committed a

serious crime," the Government "recognize[d] that there are mitigating

factors present" and recommended that "a sentence that includes a

period of three years of supervised release with six months' home

confinement, would be sufficient but not greater than necessary to achieve the purposes of sentencing." A71.

On March 25, 2024, the government submitted a supplemental sentencing submission addressing appellant's alleged "post-plea conduct in delaying sentencing and failing to provide pertinent materials to the Court and the Probation Office," which raised "serious concerns about her acceptance of responsibility and amenability to court supervision." A92-94. The government urged the court to take these matters into account at sentencing. A92. The government annexed a series of orders from family courts in Florida provided to it by appellant's former partner's lawyer. A93; A95 to A112.

On April 2, 2024, the government submitted a final sentencing letter, revising its previous recommendation of probation and requesting a sentence within the Guidelines range of 4 to 11 months. A113. Explaining its changed position, the government cited appellant's alleged efforts to delay the sentencing, including alleged

misstatements to the district court, refusals to appear as directed and failure to comply with court orders to disclose information. A117.

On April 5, 2024, defense counsel submitted a final sentencing submission on appellant's behalf, continuing to argue for a probationary sentence and citing appellant's fraught custody proceedings with her ex-boyfriend as the cause of her frequent requests for adjournment. As counsel explained:

> While her actions in this matter, specifically, her requests for adjournments of her sentencing, may appear to suggest a "willful intent not to appear," they are not so. Rather, they reflect a woman and mother struggling to survive and raise and protect her children and protect them from Mr. B., who as her mother describes in her letter, has sought to "break her," and has "pushed her beyond her limits."

A120.

The Sentencing

Aimee Harris was sentenced by the Hon. Laura Taylor Swain on April 9, 2024. The court reviewed the materials it had received, including a victim impact statement from Ashley Biden. A142. The

12

court confirmed that neither party had any objections to the

presentence report. A143. She then heard from counsel for both

parties.

Defense counsel argued for a probationary sentence, outlining

appellant's personal history of trauma, her current struggles in family

court proceedings with the father of her children, her parenting

responsibilities, and her father's stage four cancer. Disputing the

government's characterization of appellant's alleged disrespect for the

judicial system, defense counsel concluded:

> Ms. Harris, Amy is doing the best that she can.
> She is struggling and going through a lot,
> including a fierce custody battle, aging and sick
> parents, caring for her young children who, again,
> depend and need her. She's struggling but trying
> to financially provide and trying to take care of
> herself in this process. She accepts responsibility
> for what she did. She's fully aware of her
> wrongdoing, and she's deeply apologetic to Ashley
> Biden. Incarceration is unnecessary in this case
> [.].

A152.

Disputing that appellant was a "victim" herself, the government argued for a Guidelines sentence, citing the severity of the offense conduct, appellant's "pattern of disrespecting the law and the justice system, both before and after her guilty plea in this case," and the relevant § 3553 factors. A153 – A161.

Ms. Harris then addressed the court, expressing respect for the court and the judicial system, and making clear that she did "not believe that [she] was above the law." A161. She explained that her many requests for adjournment were driven by health and childcare issues. *Id.* She mentioned her "long-term history and long timeline of trauma and domestic abuse resulting in crippling anxiety, PTSD, CPTSD, battered women syndrome." *Id.* She stated that her focus was her children "to protect them from abuse and neglect," and that she lives in a constant state of "fight or flight as I fight to protect my children's lives." A161-62. She said she had read the victim impact statement and she "seriously regret[ted] making [her victim's] private . . . childhood and life public." A162.

The district court paused proceedings to reflect on what she had heard, and then returned to pronounce sentence.  A163.  She sentenced appellant to one month in custody and three years supervised release, including three months of home confinement.  A172.  The court also imposed the agreed-upon forfeiture.  A174.  The court imposed the standard conditions of supervised release and the following special conditions:

> You will participate in an outpatient treatment program approved by the United States Probation Office, which program may include testing to determine whether you have reverted to using drugs or alcohol. You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments. The Court authorizes the release of available drug treatment evaluations and reports, including the presentence investigation report, to the substance use disorder treatment provider.

> You must participate in an outpatient mental health treatment program approved by the United States Probation Office. You must continue to take any prescribed medications unless otherwise instructed by the health care provider. You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments. The

15

> Court authorizes the release of available
> psychological and psychiatric evaluations and
> reports, including the presentence investigation
> report, to the health care provider.

A172-74.

The court explained that she viewed the conduct here as "serious," despicable" and "deliberate," "done with the full knowledge of the havoc" that it would create, and criticized Appellant's vehicular "run-ins" with the law while on pretrial release, as well as disrespect of the law and the court's resources. A165-66. On the other hand, she also acknowledged the hardships that Appellant had experienced growing up and as an adult. A166-67. She noted appellant's engagement in mental health therapy while on pretrial release, and credited her "sincere expression of regret for her actions and the consequences of those actions in her own." A168. She also noted that the letters submitted in support of Appellant at sentencing "write primarily of the hardships that Ms. Harris has faced and still faces, especially with respect to her custody battle and her mental health trauma. They all state that Ms. Harris' chief focus is to her children, and that

16

she remains focused on being the best mother that she can be.

They vouch for her character and resilience." A168-69. As such, "a

lengthy custodial sentence is not necessary to deter her from future

criminal behavior or to promote respect for the law." A169.

The Judgment

The district court's judgment issued on April 9, 2024. A185. It set

forth the pronounced sentence of one month in custody and three years

supervised released, as well as a $100 special assessment and forfeiture

in the amount of $20,0000. A186, A190, A191. It set forth the standard

conditions of supervised release, A188, and the special conditions of

supervised release. A189. They aligned with the special conditions set

forth orally at sentencing: home confinement for three months,

provision of financial information to Probation, participation in an

outpatient drug treatment approved by Probation and participation in

an outpatient mental health program approved by Probation. A189.

With respect to the latter requirement, the written judgment differed

from the oral pronouncement at sentencing in two respects. First,

17

whereas the oral pronouncement authorized the release of "available psychological and psychiatric evaluations and reports to the [mental] health care provider," A174, the written judgement added to this group of documents, "the presentence report." A189. Second, whereas the oral pronouncement required that the release of any of the listed the documents to the mental health provider be at "the direction of the probation officer," A174, the written judgment did not condition release on any input from the probation officer. A189. Thus, the judgment constituted a blanket release from the district judge of "available psychological and psychiatric evaluations and reports, including the presentence investigation report, to [appellant's mental] health care provider," without any input from the probation officer. A189. This provision in the written judgment was consistent with the recommendation made by Probation in the PSR. *See* PSR at 27.

<u>The Notice of Appeal</u>

Harris's defense counsel filed a timely notice of appeal on April 22, 2024. A192.

18

## Summary of Argument

At the heart of sentencing is a human being, facing consequences for the worst moment in their life, but seeking leniency and compassion for the whole life they present. A sentence should reflect their humanity not deprive them of it. While in custody, their privacy rights are necessarily severely curtailed; on supervised release, however, their privacy rights should only be infringed based on compelling need. We submit that there is no compelling need for the challenged conditions of supervised release here: the blanket authorization to Probation to disclose Appellant's presentence report and other confidential medical and mental health data to those who should only be focused on her wellbeing. A189. When sentencing conditions undermine defendants' autonomy and privacy in the most fundamental of ways, this Court should intervene, whether it applies plain error analysis or, as we argue is applicable here, an abuse of discretion standard of review.

**Argument**

**THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT AUTHORIZED PROBATION TO DISCLOSE PROTECTED INFORMATION TO APPELLANT'S HEALTHCARE AND SUBSTANCE ABUSE PROVIDERS**

## A. Applicable Standard of Review

The propriety of a special condition of supervised release is reviewed for abuse of discretion. *United States v. Dupes*, 513 F.3d 338, 342-343 (2d Cir. 2008); *United States v. Myers*, 426 F.3d 117, 123 (2d Cir. 2005). Although sentencing courts have "broad discretion" in fashioning special conditions of supervision, this "discretion is not 'untrammeled' and '[this] Court . . . carefully scrutinize[s] unusual and severe conditions.'" *Dupes*, 513 F.3d at 343 (*quoting Myers*, 426 F.3d at 124). This Court must ensure that a condition of supervised release relate to § 3553(a)'s sentencing factors and "involve no greater deprivation of liberty than is reasonably necessary to implement the statutory purpose of sentencing." *United States v. Jenkins*, 854 F.3d 181, 188 (2d Cir. 2017), *cert. denied*, 138 S.Ct. 530 (2017). A sentencing

20

court abuses its discretion when it makes an error of law. *United States v. Reeves*, 591 F.3d 77, 80 (2d Cir. 2010); *United States v. MacMillen*, 544 F.3d 71, 74 (2d Cir. 2008); *Dupes*, 513 F.3d at 343. Questions of law arising from the imposition of a condition of supervised release are reviewed de novo. *Reeves*, 591 F.3d at 80; *MacMillen*, 544 F.3d at 74.

Where, as here, the conditions were not objected to at sentencing but were not sufficiently previewed to counsel, this Court adopts a "relaxed plain error" standard. *United States v. Matta*, 777 F.3d 116, 121–22 (2d Cir. 2015) (adopting such a relaxed standard where a defendant lacked "a sufficient opportunity to raise a contemporaneous objection" to a condition of supervised release). Here, Probation previewed its proposed disclosure requests in the PSR, PSR at 27, but did not address the delegation issue and it was the district court that chose to add that component (orally at sentencing with respect to all treatment providers and in writing in the judgment with respect to only substance abuse treatment providers). As such, counsel, who had fallen on the proverbial sword to get the best possible outcome for his client,

21

A87 (proposing a sentence "with any conditions imposed as the Court deems necessary"), should not be deemed to have waived objections to a condition with far-reaching and intrusive consequences.

In any event, to the extent Appellant's claims are deemed subject to a plain error standard, we submit that that standard is met here. Unpreserved claims are reviewed for plain error. *See United States v. Olano*, 507 U.S. 725, 732 (1993); *Dupes*, 513 F.3d at 343 (citing *United States v. Sofsky*, 287 F.3d 122, 125 n.2 (2d Cir. 2002)). Under the plain error standard of review, there must be error, that is plain, and that affects substantial rights. *Olano*, 507 U.S. at 732. Moreover, the error must "seriously affect the fairness, integrity or public reputation of the judicial proceedings" in order for the Court to use its discretion in order to correct the unpreserved error. *Id*. We submit that any alleged unpreserved claim pertaining to the disclosure of highly confidential data to Appellant's healthcare providers meets the requirements for this Court to correct the errors.

## B. The Presentence Report Is a Highly Confidential Document Subject to Stringent Disclosure Requirements

The pre-sentence report ("PSR"), the "bible"[1] that accompanies a sentenced defendant through the Bureau of Prisons and their experience on supervision, is a comprehensive portrait of an individual's life, setting forth their personal background, prior criminal (including arrest but unconvicted) record, their financial condition, including their annual tax information, medical and mental health history, and the circumstances of the offense, usually based on extensive FBI reports provided to the PSR writer during the drafting process. *See* Fed.R.Crim.P. 32 (setting forth the contents of the presentence report).

As the Seventh Circuit recounted in *United States v. Corbitt,* 879 F.2d 224 (7th Cir.1989), a defendant's presentence report may contain "a listing of juvenile adjudications involving the defendant (which is normally confidential under state law); allegations concerning the

---

[1] Gregory W. Carman & Tamar Harutunian, *Fairness at the Time of Sentencing: The Accuracy of the Presentence Report*, 78 ST. JOHN's L. REV. 1, 5 (Winter 2004).

defendant's involvement in other, uncharged offenses; the defendant's physical and mental health (including the defendant's I.Q., results of psychiatric tests, history of substance abuse problems and any '[u]nusual fears, hostilities, obsessions, compulsions, depressions, or sexual deviations'); any history of child abuse or neglect; details of the defendant's relationship with his or her spouse or 'significant other;' and a detailed accounting of the defendant's financial condition" as well as "information about the defendant's family, including any '[h]istory of emotional disorders, diseases, and criminal behavior.'" *Id.*, 879 F.2d at 230–31.

The presentence report can also be replete with inaccuracies. *See*, *e.g.*, Michael R. Devitt, *Improper Deportation of Legal Permanent Residents: The U.S. Government's Mischaracterization of the Supreme Court's Decision in Nijhawan v. Holder*, 15 San Diego Int'l L.J. 1, 9 (2013) ("Investigative reports (e.g., pre-sentence, probation, and police reports) are notoriously untrustworthy and often contain a slanted view of reality by utilizing multiple levels of unreliable hearsay"); *A Proposal*

*to Ensure Accuracy in Presentence Investigation Reports*, 91 Yale L.J. 1225, (May 1982) ("The Presentence Investigation Report (PSI) is the primary source of [defendant]'s information for all stages of the correctional process. PSIs, however, often contain inaccurate information, which may lead to inappropriate and unfair judgments regarding an offender's sentence, custody conditions, or parole eligibility.").

These reports, as this Court has pointed out, "are not public records but rather confidential reports to the trial judge for use in [their] effort to arrive at a fair sentence." *United States v. Charmer Indus., Inc.,* 711 F.2d 1164, 1171 (2d Cir. 1983). As such, this Court requires that a district court "should not authorize disclosure of a presentence report to a third person in the absence of a compelling demonstration that disclosure of the report is required to meet the ends of justice." *Charmer,* 711 F.2d 1175; *see also Corbitt*, 879 F.2d at 229-30 (identifying three general factors to "justify the secrecy of presentence reports: (1) the privacy interests of the defendant, the defendant's

25

family and the crime victim; (2) the interest of the court in full disclosure of information relevant to sentencing; and (3) the interest of the government in the secrecy of information related to ongoing criminal investigations, and information derived from grand jury proceedings."). Essentially, as the *Corbitt* court acknowledged, when it comes to the presentence report, "the privacy interests of defendant, the defendant's family and the crime victim in a defendant's presentencing report are exceptional." *United States v. Amodeo*, 1995 WL 261517, at *3 (S.D.N.Y. May 3, 1995), *rev'd in non-relevant part*, 71 F.3d 1044 (2d Cir. 1995). In particular, the "wide dissemination of this information would discourage participation by victims in the sentencing process." *Id.* (quoting *Corbitt,* 879 F.2d at 232); *see also United States Dep't of Justice v. Julian*, 486 U.S. 1, 12 (1988) (noting that courts are reluctant to give third parties access to presentence reports because of a "fear that disclosure of the reports will have a chilling effect on the willingness of various individuals to contribute information that will be incorporated into the report [and] the need to protect the confidentiality of the

26

information contained in the report"); *United States v. Madoff*, 2009 WL 3347945, at *1 (S.D.N.Y. Oct. 13, 2009) ("the privacy interests of Madoff, his family, and victims substantially outweigh petitioner's aspirations to contribute to the academic debate on deviance theory and market regulation.").

## C. Appellant Has Constitutional, Statutory and Common Law Rights in the Confidentiality of her Healthcare Data and the Integrity of her Relationships with Healthcare Providers

While an individual's presentence report is a unique document with confidential data and its own unique protections, as outlined above, their medical and mental health data is very clearly protected under a robust Constitutional, statutory and common law scheme. At the Constitutional level, individuals have a right to privacy, which encompasses medical data. *See, e.g., Hancock v. Cty. of Rensselaer*, 882 F.3d 58, 65 (2d Cir. 2018) ("The Fourteenth Amendment's due process clause protects individuals from arbitrary governmental intrusions into their medical records.").

At the statutory level, medical data is protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 29 U.S.C. § 1182.

The common law similarly protects an individual's medical records. *See, e.g., Prescott v. Cty. of Stanislaus*, 2011 WL 2119036, at *1, fn. 2 (E.D. Cal. May 23, 2011) (noting that a patient has a right of privacy in the confidentiality of his medical records even after his death and these rights may be asserted by the decedent's survivors).

All the arguments made above regarding the disclosure of the presentence report apply with full force and more to the disclosure of Appellant's protected medical data. The question here is whether Appellant's status as a probationer means that this information can be automatically provided to Appellant's healthcare providers. That question involves the issue of Appellant's right to privacy in connection with her relationship with such providers.

This Court has already spoken eloquently on the issue of doctor-patient privacy:

> An interest in medical privacy derives not just from a desire to keep one's medical conditions to oneself but also from the collectively enjoyed benefit of being able to expect confidentiality from those we depend on to care for the most intimate aspects of our lives. A slow drip of exceptions would erode that protection beyond recognition. As such, the interest in preserving the integrity of the doctor-patient relationship deserves its own consideration independent of the idiosyncrasies of the privacy invasion. The baseline individual interest in privacy is thus substantially greater than whatever the least abashed individual would allow.

*Hancock*, 882 F.3d at 67.

The physician-patient privilege is one of the cornerstones of privileged relationships in our society and the right to privacy is a critical component in protecting this relationship. It is well established that the Constitution accords individuals some right of privacy. *Nixon v. Administrator of General Services,* 433 U.S. 425, 455–65 (1977); *Whalen v. Roe,* 429 U.S. 589, 598–604 (1977); *Igneri v. Moore,* 898 F.2d 870, 873 (2d Cir.1990). Although rather "difficult to articulate precisely," this privacy right clearly protects at least two kinds of privacy interests: "[o]ne is the individual interest in avoiding disclosure

of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen,* 429 U.S. at 599–600; *See also Nixon,* 433 U.S. at 457, 97 S.Ct. at 2797. Both interests are implicated here.

**D. The District Court Failed to Present a Compelling Reason for the Blanket Authorization to Probation to Release her Presentence Report and her Drug Treatment and Mental Health Evaluations**

This Court requires "a compelling demonstration that disclosure of the [presentence] report is required to meet the ends of justice," before release of such report is permitted. *Charmer*, 711 F.2d 1175. Here, the district court provided no reason for the blanket authorization of disclosure of a report that contains profoundly personal, intimate information, including third party testimony that may be inaccurate, to Appellant's healthcare providers. So too, with regard to prior medical and psychological reports.

At sentencing, Appellant had already been engaged in long-term mental health therapy with a trusted therapist for the past nine or so years. There has never been any question raised that this relationship

30

is not frank, open and productive.  Her therapist wrote a letter in support of Appellant's request for a noncustodial sentence.  A90-91.  No question was ever raised in the proceedings below that Appellant was hiding information from her therapist or that that relationship was not assisting Appellant on a path of healing, sobriety and positive engagement with society.  The interjection of Appellant's presentence report into that relationship (or any other health-care relationship) (with extensive recitation of the government's position about Appellant's conduct) is unnecessary, inflammatory and potentially counter-productive.  Nothing in the court's sentencing pronouncement or the judgment justifies usurping Appellant's right to autonomy in her own control and navigation of her healthcare relationships.[2]

---

[2] Counsel's request for access to the Statement of Reasons in this case was denied.  Docket #133.

31

E. **The District Court Improperly Delegated its Sentencing Authority to the Supervising Probation Officer**

Finally, the district court committed additional error by delegating its authority to Probation. "The power to impose special conditions of supervised release . . . is vested exclusively in the district court." *Matta,* 777 F.3d at 122 (citing 18 U.S.C. § 3583; U.S.S.G. § 5D1.3(b), (d)(4)). A district court may delegate to probation decision-making authority "over certain minor details of supervised release," but may not delegate decision-making authority "which would make a defendant's liberty itself contingent on a probation officer's exercise of discretion." *Id.* (citing *United States v. Peterson,* 248 F.3d 79, 85 (2d Cir. 2001)). The probation officer may decide relatively minor details of a probationer's therapeutic treatment (the provider or treatment schedule), but larger decisions (like whether the probation must engage in treatment) may not be delegated to the probation officer. *Matta* at 122.

The decision to share confidential information with a treatment provider is not quite the same as the preliminary issue of engaging in

treatment, but nor is it simply ministerial, since it impinges directly on the sanctity of the medical privilege. Probation officers are meant to execute a sentence, not impose it. *Id.* (citing *United States v. Reyes,* 283 F.3d 446, 456 (2d Cir. 2002)).

Here, the district court impermissibly delegated to Probation unfettered discretion to decide what confidential Constitutionally- and HIPAA-protected documents should be disclosed to Appellant's healthcare providers, without any reference to Appellant's wishes and any respect for her autonomy in her healthcare relationships. Such sentencing authority and exercise of discretion cannot be delegated to Probation. As this Court acknowledged in *United States v. Kunz*, 68 F.4th 748 (2d Cir. 2023), the formulas about delegation "are easily recited" but "less easily applied." *Id.* at 765. "[A]ssessing whether the details left to Probation's discretion involve significant impositions on the supervisee's liberty (like the choice between inpatient and outpatient drug treatment, *see Matta*, 777 F.3d at 123) or matters of 'minor' detail (such as the choice of a particular treatment provider, *see*

33

*Peterson*, 248 F.3d at 85) demands a careful and contextual analysis of both the nature of the overall condition and the relative importance of the specific choice to the broader intrusion upon the supervisee's liberty." *Kunz*, at 766. Here, we submit that the decision whether to invade the medical professional-client relationship with highly confidential information falls on the *Matta* side of the equation.

## Conclusion

For the reasons stated above, this Court should vacate the special conditions of supervised release imposed on appellant that authorize the Probation Department to disclose her presentence report and drug treatment and psychological and psychiatric reports and evaluations to her healthcare and substance abuse treatment providers.

Dated:     September 24, 2024
             Minneapolis, Minnesota

                            Respectfully submitted,

                            /s/ JaneAnne Murray
                           JANEANNE MURRAY
                           *Attorney for Aimee Harris*

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. 32(g) and Local Rule 32.1(a)(4)(A) in that the brief contains 5453 words according to the word-processing program used to prepare the brief. The brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) in that the brief has been prepared in Century Schoolbook typeface in Word 2021 in 14 point size.

Dated:     Minneapolis, Minnesota
               September 24, 2024

_/s/   JaneAnne Murray_

JaneAnne Murray